**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| Ernesto Centeno, ) | No. 1:08-CV-1435-FJM |
| Plaintiff, ) | **ORDER** |
| vs. ) |  |
| David Wilson, et al., ) |  |
| Defendants. ) |  |

The court has before it defendants' motion for summary judgment (doc. 32) and plaintiff's response (doc. 36).

Plaintiff is an inmate at the California Correctional Institution. On March 15, 2007, a confidential source informed correctional officers that plaintiff was in possession of marijuana, which he had concealed in his anus. On March 15, 2007, plaintiff was placed on contraband surveillance watch ("CSW"), which is a temporary confinement used to determine whether an inmate has ingested or secreted contraband in his digestive tract. While in CSW, inmates are kept in hand and feet restraints unless they are eating or relieving themselves. They are not allowed to take showers. They are kept under constant surveillance and are in direct contact with medical staff. CSW inmates are given socks, boxer shorts, pants with an elastic band, and a t-shirt. CSW policy provides that inmates are to be given a blanket and mattress from 9 p.m. to 6 a.m. Each of these steps is taken to ensure that the inmate will not be able to secretly retrieve and dispose of contraband. When

the inmate urinates or defecates the waste is captured and searched. Under CSW policy, inmates must have three clean bowel movements before being removed from CSW in order to ensure that all contraband is discharged.

On March 17, 2007, plaintiff told defendant Ross, a contraband watch officer, that he had to defecate. Ross notified his supervisor, defendant Wilson. Plaintiff's restraints were removed and plaintiff defecated into a container. The waste was examined and seven individually wrapped cellophane bindles containing what were later proven to be marijuana were discovered. While in CSW, a registered nurse examined plaintiff's restraints on 7 different occasions. Plaintiff had bowel movements on March 18 and 19, 2007, with negative results. On March 20, 2007, at 7:16 a.m., plaintiff had a third clean bowl movement and, according to prison officials and records, was taken off CSW fifteen minutes later and placed in administrative segregation pending resolution of his rules violation for possession and sale of marijuana. Plaintiff disputes this allegation and instead contends that he was not released from CSW until March 22, 2007. For purposes of this summary judgment motion, we accept plaintiff's version of the facts as true and assume that he was kept in CSW for 7 days. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986).

Plaintiff filed this action under 42 U.S.C. § 1983, alleging that defendants Ross and Wilson subjected him to cruel and unusual punishment in violation of his Eighth Amendment rights by continuously holding him in restraints and depriving him of a blanket, mattress, and shower during his CSW confinement. Defendants argue that they are entitled to qualified immunity because they did not violate plaintiff's constitutional rights and because a reasonable person in their position could have believed their conduct was lawful.

**I**

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, ___, 129 S. Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982)). The threshold inquiry in a qualified immunity analysis

1  is whether plaintiff's allegations, accepted as true, establish a constitutional violation.

2  Plaintiff asserts two Eighth Amendment violations. He contends that defendants used excessive force by holding him in restraints during his CSW confinement. He also charges that he was deprived of a blanket, mattress, and shower for 7 days and therefore the "conditions of his confinement" constituted cruel and unusual punishment. Although the applicable test varies according to the nature of the alleged Eighth Amendment violation, underlying each Eighth Amendment claim is the guiding principle that the "unnecessary and wanton infliction of pain" constitutes cruel and unusual punishment in violation of the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1, 5, 112 S. Ct. 995, 998 (1992); see also Whitley v. Albers, 475 U.S. 312, 319, 106 S. Ct. 1078, 1084 (1986) (excessive force); Rhodes v. Chapman, 452 U.S. 337, 346, 101 S. Ct. 2392, 2399 (1981) (conditions of confinement).

There are two parts to the test of whether an Eighth Amendment violation has occurred. The first part is objective: Was the alleged wrongdoing "harmful enough" to establish a constitutional violation? Hudson, 503 U.S. at 8, 112 S. Ct. at 999. The objective prong assimilates contemporary and evolving standards of decency. Id. The second part of the test is subjective: Did the prison official act with a sufficiently culpable state of mind? Id.

### A. Conditions of Confinement

The Eighth Amendment imposes duties on prison officials to provide humane conditions of confinement, which include the provision of adequate food, clothing, shelter, safety, and medical care to inmates. Farmer v. Brennan, 511 U.S. 825, 832, 114 S. Ct. 1970, 1976 (1994). Uncomfortable or even harsh living conditions do not implicate the Eighth Amendment. Rhodes, 452 U.S. at 347, 101 S. Ct. at 2399. Instead, "extreme deprivations are required" to rise to the level of a constitutional violation. Hudson, 503 U.S. at 9, 112 S. Ct. at 1000. "[O]nly those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson v. Seiter, 501 U.S. 294, 298, 111 S. Ct. 2321, 2324 (1991) (quoting Rhodes, 452 U.S.

at 347, 101 S. Ct. at 2399). We will consider the circumstances, nature, and duration of a deprivation of these necessities in determining whether a constitutional violation has occurred. Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000).

Plaintiff contends that the conditions of his confinement constituted cruel and unusual punishment when he was forced to sleep on a cold floor without a mattress or blanket for 7 days and was unable to shower while in CSW confinement. He alleges that his muscles ached from shivering and sleeping was difficult.

We conclude that the living conditions experienced by plaintiff for this limited duration were not so extreme as to violate contemporary standards of decency and rise to the level of a constitutional deprivation. We note that the brief deprivation of a blanket and mattress alone, falls short of the "extreme deprivation" required to support a constitutional violation. See Schroeder v. Kaplan, 60 F.3d 834 (9th Cir. 1995) (citing cases where failure to provide a mattress violated the Eighth Amendment only when accompanied by other factors, such as inadequate clothing, extreme cold, improper diet, denied right to use toilet, had to lie in own excrement). Here, plaintiff received adequate food, clothing, shelter, and medical care while in CSW confinement. The limited deprivation of a mattress, blanket, and shower under the circumstances of this case is insufficient to state an Eighth Amendment violation.

Not only do we conclude that plaintiff has failed to satisfy the objective component of the Eighth Amendment test, we also hold that there is no showing that the prison officials acted with a sufficiently culpable state of mind, which in the context of a conditions-of-confinement claim is deliberate indifference. Wilson, 501 U.S. at 303, 111 S. Ct. at 2327. The alleged deprivations occurred as a result of plaintiff secreting illegal drugs in his anus. There is no allegation that defendants acted for any purpose other than to follow CSW prison procedure and protocol in order to ensure the recovery of the hidden contraband. Because there is no showing of a constitutional violation with respect to plaintiff's conditions of confinement, defendants' motion for summary judgment is granted as to this claim.

**B. Excessive Force**

Plaintiff also claims that his Eighth Amendment rights were violated when he was held in restraints for 7 days while in CSW detention. He contends that the restraints were uncomfortable, resulting in pain, sores on his wrists, and scars.

Whenever a prison official is accused of using excessive physical force against a prison inmate in violation of the Eighth Amendment, the central inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 7, 112 S. Ct. at 999 (citing Whitley, 475 U.S. at 320-21, 106 S. Ct. at 1085). Excessive force may amount to cruel and unusual punishment even when the inmate does not suffer serious injury. Id. at 9-10, 112 S. Ct. at 1000. In deciding whether the use of force was wanton and unnecessary, we will consider factors such as the extent of any injury, the need for the use of force, and whether that need supports the amount of force used. Hudson, 503 U.S. at 7, 112 S. Ct. at 999. We will also consider "any efforts made to temper the severity of a forceful response." Id. (quoting Whitley, 475 U.S. at 321, 106 S. Ct. at 1085).

Here, plaintiff claims that the use of restraints during his CSW confinement caused pain, sores and ultimately permanent scarring to his wrists. He relies on Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508 (2002) to support his claim that the restraints he suffered amounted to cruel and unusual punishment. The inmate in Hope was handcuffed to a hitching post as punishment for disruptive behavior. He was forced to remain in a standing position with arms raised, shirtless, in the sun, for more than 7 hours, without regular water or bathroom breaks. He suffered sunburn, dehydration, muscles aches, and burns from the handcuffs. The Court concluded that this punitive treatment, without any penological justification, amounted to a "gratuitous infliction of wanton and unnecessary pain" prohibited by the Eighth Amendment. Id. at 738, 122 S. Ct. at 2515.

The case before us is in stark contrast to Hope. Here, plaintiff was placed in restraints not for punishment, but in order to ensure that the illegal drugs he had hidden would be recovered. The restraints served a valid penological purpose of preventing plaintiff from retrieving and disposing of the contraband. Although in restraints, he had the freedom of

movement to walk, sit, stand, or lie down. His restraints were regularly checked by medical staff in order to limit discomfort or injury. Plaintiff makes no showing that defendants had a sufficiently culpable state of mind. Rather, the undisputed facts show that the restraints were used in a good faith effort to maintain security, discipline, and order in the prison, not maliciously or sadistically to cause harm. The use of restraints under these circumstances does not rise to the level of an Eighth Amendment violation. Defendants' motion for summary judgment on the excessive force claim is granted.

## II

**IT IS ORDERED GRANTING** defendants' motion for summary judgment (doc. 32). The clerk shall enter final judgment.

DATED this 4th day of March, 2011.

_Frederick J. Martone_
Frederick J. Martone
United States District Judge